# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jun 30, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)  Case No. 22 MJ 126
Jessica O'HORA (of Kenosha, Wisconsin, born  )
xx/xx/1994) and the cellular device assigned call  )
number 262-302-6383  )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Eastern____ District of ____Wisconsin____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Sections 922(a)(6), 922(d), 922(n), and 371 | False statements to a federal firearms licensee; transferring a firearm to a prohibited person; unlawful receipt of a firearm by an individual with felony charges; conspiracy to commit a federal offense. |

The application is based on these facts:

See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**RICHARD CONNORS**  Digitally signed by RICHARD CONNORS
Date: 2022.06.27 15:46:56 -05'00'

*Applicant's signature*

ATF Special Agent Richard Connors
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: 6/30/2022

*Judge's signature*

City and state: Milwaukee, WI   Honorable William E Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, ATF SPECIAL AGENT RICHARD CONNORS, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the person of Jessica O'HORA (DOB: xx/xx/1994), seize the cellular device assigned call number 262-302-6383 (the "target cell phone"), and seize electronically stored information from the target cell phone consistent with Attachment B. The target cell phone is not currently in law enforcement possession.

2. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over 6 ½ years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two (2) bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

3. I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. I have additionally worked multiple investigations involving individuals prohibited from possessing firearms. I know that there are ten categories that can prohibit a person from possessing firearms to include being an unlawful user of a controlled substance.

4. I have participated in several firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. In many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. I respectfully submit there is probable cause to believe that evidence of federal firearms violations, particularly relating to false statements to a federal firearms licensee, in violation of Title 18, United States Code, Section 922(a)(6), transferring a firearm to a prohibited person, in violation of Title 18, United States Code, Section 922(d), unlawful receipt of a firearm by an individual with pending felony charges, in violation of Title 18, United States Code, Section 922(n), and conspiracy to commit a federal offense, in violation

of Title 18, United States Code, Section 371, is contained on the target cell phone, and that the target cell phone will be found on the person or in the presence of Jessica O'HORA.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The person to be searched is Jessica O'HORA (DOB: xx/xx/1994). The applied-for warrant would authorize the search of O'HORA for the purpose of seizing the target cell phone, as property to be searched. The applied-for warrant would further authorize the forensic examination of the target cell phone for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. On August 26, 2020, a subject identified as Nygil A. MCDANIEL (DOB: xx/xx/1994) was stopped by officers from the Kenosha Police Department (KPD) for a curfew violation after days of civil unrest related to an officer involved shooting which occurred on August 23, 2020. A city-wide curfew order was issued from 7:00PM on 08/26/2020 until 7:00AM on 08/27/2020.

9. At approximately 8:30PM on the evening of August 26, KPD officers observed two individuals walking eastbound in an alleyway between 52nd and 53rd streets in Kenosha. Officers saw at least one long gun resembling an assault rifle. Both individuals, including MCDANIEL, were detained for violating the citywide curfew order. As officers approached, MCDANIEL lowered a loaded AK-style pistol to the ground. He told officers that he had another firearm in his backpack. After an inventory search of a black tactical backpack worn by MCDANIEL, officers recovered one (1) Glock pistol, model 27, .40

3

caliber, bearing serial number BGBX771, one (1) clear plastic bag containing a green leafy substance which appeared to be marijuana, and one (1) Samsung touchscreen cell phone with a black camouflage pattern case. MCDANIEL was arrested for violating state of Wisconsin statutes 961.41(3G)(e)-possession of marijuana, 941.23(2)-carry concealed weapon, and 323.28-curfew violation.

10. Continuing on the same date, KPD Officer Jason Krueger weighed the suspected bag of marijuana which had an approximate weight of 13.6 grams. Additionally, Officer Krueger tested the substance using a Duquenois-Levine Reagent E test kit. The substance tested positive for the presence of THC.

11. On August 27, 2020, your affiant along with ATF Special Agent Dalton Evertz interviewed MCDANIEL regarding his arrest. The custodial interview occurred at the Kenosha County Sheriff's Department and was audio/video recorded. The Miranda warning was administered via recitation of ATF Form 3200.4 (Advice of Rights and Waiver); MCDANIEL voluntarily waived his rights. Additionally, MCDANIEL voluntarily waived the right to prompt presentment in Federal Court and stated that he wished to speak with us.

12. After MCDANIEL waived his rights, I asked MCDANIEL to explain the events leading up to his arrest on August 26, 2020. MCDANIEL stated that he, along with his cousin, had planned on attending protests in Kenosha to "deter someone from making a mistake." MCDANIEL explained he is a Kenosha resident and did not want to see any damage done to his community. MCDANIEL acknowledged, in relevant part, that when he was arrested he possessed a "draco" (which I know to be a common term for an AK-style pistol), a Glock 27 pistol, and marijuana. MCDANIEL informed us that the AK-style pistol

4

he was carrying belonged to his cousin, who was the other individual stopped with him in the alleyway. MCDANIEL again admitted he had an additional firearm, a Glock 27 .40 caliber pistol, in the backpack he was carrying at the time of his arrest. MCDANIEL stated he was the owner of the Glock 27 pistol. MCDANIEL informed us he purchased the firearm from Gander Mountain in/around March 2020. I am aware that Gander Mountain is now known as Camping World of Kenosha and is a Federal Firearms Licensee. MCDANIEL claimed that he had not carefully reviewed the Firearms Transaction Record (ATF Form 4473) that he completed as part of that purchase.

13. I asked MCDANIEL to discuss his (MCDANIEL's) marijuana usage. MCDANIEL replied that he smokes marijuana "not every day, but just about." MCDANIEL admitted that he has been a regular user of marijuana for several years, and estimated that he has been using marijuana approximately five times per week throughout 2020. MCDANIEL was informed about the ramifications of controlled substance use as it relates to his ability to lawfully purchase and possess firearms under federal law.

14. Lastly, MCDANIEL confirmed the cell phone located in his backpack was a Samsung Galaxy S20.

15. On September 16, 2020, SA Evertz obtained the Firearms Transaction Record (ATF Form 4473) for the aforementioned Glock 27 handgun. The firearm was transferred to MCDANIEL on April 24, 2020, from Federal Firearm Licensee Gander Outdoors located at 6802 118th Ave, Kenosha, WI, 53142. The form asked: "*Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?*" On April 17, 2020, MCDANIEL filled out the firm and answered "no";

MCDANIEL certified that this answer was "still true, correct, and complete" a week later when he took possession of the Glock.

16. On September 23, 2020, a federal search warrant was issued, authorizing the search of MCDANIEL's Samsung Galaxy S20, which had been seized incident to MCDANIEL's arrest and was in the lawful possession of the Kenosha Police Department at the time.

17. In examining MCDANIEL's phone, I found that there were text messages between MCDANIEL and telephone number 262-909-5881. This number was saved in MCDANIEL's phone contacts as "Jess." Based on review of MCDANIEL's phone and information contained in a database accessible to law enforcement and others, it is believed that cell phone number 262-909-5881 belonged to Jessica O'HORA (DOB: xx/xx/1994) in August 2020. A text message sent by "Jess" on or about August 24, 2020, indicates that O'HORA was aware as of that time of MCDANIEL's possible use of controlled substances.

18. On or about November 12, 2020, Sturtevant Police were dispatched to 8617 Buckingham Dr, Unit 8, Sturtevant, WI. There, they encountered O'HORA who advised MCDANIEL had got in an altercation with her and left their apartment damaged and in disarray. O'HORA said she lived with MCDANIEL at this address and that they had been in a relationship off and on for 13 years. MCDANIEL was charged with misdemeanor counts in Racine County as a result of this incident.

19. On or about April 7, 2021, Sturtevant Police once again were dispatched to 8617 Buckingham Dr, Unit 8, Sturtevant, WI. Officers encountered O'HORA who advised MCDANIEL had taken her Romar/Cugir GP/WASR- 10/63 semi-automatic (AK-47 Style) rifle, 7.62X39 caliber, bearing serial number 1972CC3481. O'HORA told Police she

6

purchased the firearm from a private seller on March 17, 2021, and allowed MCDANIEL, her ex-boyfriend, to store the firearm in his possession with the understanding if the two separated he would return the firearm. O'HORA showed the bill of sale to police which listed MCDANIEL as the witness to the sale. She showed police text messages, purportedly between herself and MCDANIEL, regarding the rifle and her wish to have it returned. Officers contacted MCDANIEL. He confirmed that he had the rifle and had been discussing its return with O'HORA. On April 13, 2021, O'HORA informed police that MCDANIEL had returned the rifle. No charges were filed.

20. On January 11, 2022, I spoke with O'HORA on the phone. I had earlier traveled to 2026 89th St, Unit 1, Kenosha, WI, 53143, to interview O'HORA. I had not found O'HORA at that point in time, and had left my contact information with a roommate. Shortly after, I received a phone call from telephone number 262-302-6383. The woman on the line identified herself as O'HORA. I asked O'HORA to clarify what occurred between her and MCDANIEL in April of 2021. O'HORA advised that in March 2021 she purchased an AK-47 style rifle on behalf of MCDANIEL. O'HORA said that the private seller of the rifle did not wish to sell to anyone who had a criminal history viewable on Wisconsin Circuit Court Access Program (CCAP). I am aware that MCDANIEL has several cases listed on CCAP, including pending misdemeanor charges in Racine County as of April 2021. O'HORA advised MCDANIEL was supposed to complete a bill of sale firearm transfer record to her for the firearm but he never did and that is when she involved the police. O'HORA advised she did receive the firearm from MCDANIEL and she still had possession of the rifle.

21. On or about October 26, 2021, felony charges were filed against MCDANIEL in Racine County for neglecting a child under court case no. 2021CF001653. It is against federal law to receive firearms once an indictment or information has been filed against an individual in a court of law.

22. On March 24, 2022, MCDANIEL was questioned by Kenosha police officers after reports of a disturbance at a residence. Police determined that MCDANIEL had an active arrest warrant. MCDANIEL advised police that he had a weapon on his person. Incident to MCDANIEL's arrest, police recovered a Smith & Wesson handgun, model SD9VE, 9mm, bearing serial number FDK7752. MCDANIEL was asked who the gun belonged to. He shrugged and did not answer.

23. Further investigation revealed that the Smith & Wesson pistol recovered from MCDANIEL's person on March 24, 2022, had been recently purchased by O'HORA. Specifically, on March 11, 2022, O'HORA obtained a Smith & Wesson handgun, model SD9VE, 9mm, bearing serial number FDK7752, from Jalensky's Outdoors & Marine, a federal firearms licensee (FFL) located at 5307 Green Bay Rd, Kenosha, WI, 53144. O'HORA completed an ATF Firearms Transaction Record/Form 4473, identifying herself as the actual transferee/buyer of the gun. In the address section, O'HORA listed 2026 89th St, Unit 1, Kenosha, WI, 53143, as her address. She provided telephone number 262-302-6383 on a Wisconsin Department of Justice handgun transfer form.

24. A Jalensky's employee supplied paperwork showing that O'HORA purchased the firearm from ACE Buyers, a FFL in Michigan, through Guns.com, and the firearm was shipped to Jalensky's to complete the transfer and ATF Form 4473. The paperwork

indicates that O'HORA provided phone number 262-302-6383. The Guns.com order summary indicates that O'HORA's address as 8617 Buckingham Road Apt 8, Sturtevant, WI, 53177. This address is associated with MCDANIEL on a commonly searched law enforcement database. As discussed in part above, Sturtevant Police officers responded to this address on at least three occasions (in August 2020, November 2020, and April 2021) involving MCDANIEL and O'HORA, and it appears that MCDANIEL and O'HORA lived together there as of 2020.

25. A firearms time to crime refers to the time period elapsed between a purchase at a licensed FFL through a firearm's recovery by law enforcement during the commission of a crime or other means. Based on information published by the ATF's Violent Crime Analysis Branch (as of June 16, 2016), the national average time for a gun to be recovered in a crime by law enforcement after the original purchase date is 10.48 years. I also know that the average time-to-crime for firearms in Wisconsin is 8.18 years. The time to crime applicable to Kenosha police's March 2022 recovery of the Smith & Wesson pistol in MCDANIEL's unlawful possession is 13 days.

26. Your affiant is aware individuals who straw purchase firearms on others' behalf often communicate via electronic means. That could involve cell phones, computers, social media, and other means. The communication occurs to facilitate the straw purchase, *i.e.*, where to buy the firearm, how much it will cost, and when the prohibited individual can pick up the firearm. As referenced above, I am aware that MCDANIEL and O'HORA have communicated through text messages in the past. Furthermore, it appears that the Smith &

9

Wesson pistol seized from MCDANIEL in March 2022 was purchased online, and that the purchase is linked to an address previously shared by MCDANIEL and O'HORA.

27. Based on my training and experience, I know that people often carry their cellular devices on their person or in their presence.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. There is probable cause to believe that things that were once stored on the target cell phone may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

10

Case 2:22-mj-00126-WED   Filed 06/30/22   Page 11 of 17   Document 1

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

30. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the target cell phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the target cell phone because:

11

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

32. I submit that this affidavit supports probable cause for a warrant authorizing the search of Jessica O'HORA for the purpose of seizing the target cell phone, and forensic examination of the target cell phone for the purpose of identifying and seizing the items described in Attachment B.

# ATTACHMENT A

The person to be searched is Jessica O'HORA (DOB: xx/xx/1994).

The property to be searched is the cellular device assigned call number 262-302-6383 (the "target cell phone").

This warrant authorizes the forensic examination of the target cell phone for the purpose of identifying electronically stored data particularly described in Attachment B.

# ATTACHMENT B

1. All records on the target cell phone described in Attachment A that relate to violations of Title 18, United States Code, Section 922(a)(6) (false statements to a federal firearms licensee), Title 18, United States Code, Section 922(d) (transferring a firearm to a prohibited person), Title 18, United States Code, Section 922(n) (unlawful receipt of a firearm by an individual with pending felony charges), and Title 18, United States Code, Section 371 (conspiracy), and involve **Nygil A. MCDANIEL** and **Jessica O'HORA** since on or about **March 17, 2021**, including:

   a. transaction information regarding O'HORA's purchases of firearms in 2021 and 2022;

   b. any information or discussion related to the purchase, transfer, possession, and/or use of firearms or controlled substances by O'HORA and/or MCDANIEL;

   c. any information recording O'HORA's and MCDANIEL's schedule or travel on relevant dates;

   d. all bank records, checks, credit card bills, account information, and other financial records relating to the purchase, transfer, and/or use of firearms or controlled substances;

   e. relevant photos, videos, IP addresses, contact information, or contact lists;

   f. text messages, social media messages and content, SMS messages, iMessage data, relating to the purchase, transfer, and/or use of firearms or controlled substances;

   g. electronic mail to include the content of the emails, and associated email addresses, relating to the purchase, transfer, and/or use of firearms or controlled substances;

2. Evidence of user attribution showing who used or owned the target cell phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.